```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JAMES MISSEL,

                    Plaintiff,              10-CV-6380

          v.                                 DECISION
                                             and ORDER
COUNTY OF MONROE, JOHN DOE DEPUTIES
1-5; in Their Official and Individual
Capacities, and MICHAEL HILDRETH

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff James Missel ("Missel" or "Plaintiff") brings this action against defendants Monroe County Deputy Sheriffs "John Doe Deputies 1-5" and the County of Monroe (collectively the "County defendants") claiming that the defendant Deputies engaged in a campaign of harassment and retaliation against him in violation of his rights under the United States Constitution, and that the County maintained a policy or custom pursuant to which the Deputies violated his rights, or improperly permitted the Deputies to infringe upon his constitutional rights. Plaintiff also makes claims of negligent and intentional infliction of emotional distress against defendant Michael Hildreth, ("Hildreth") a former Monroe County Deputy Sheriff.

According to Missel, the County defendants harassed him in retaliation for having filed a lawsuit in 2007 against the County

1

and Hildreth. In that lawsuit, Missel alleged that the County failed to supervise the actions of Hildreth, who is also a neighbor of the plaintiff. According to the allegations in the 2007 Complaint, Hildreth believed that Missel was a pedophile, and used his position as Deputy Sheriff to investigate Missel's conduct. Hildreth also used spyware installed on Missel's home computer to track Missel's use of the internet in a failed attempt to discover illegal conduct. Upon discovery that Hildreth had been unlawfully monitoring Missel's computer, the Sheriff's Department conducted an investigation of Hildreth, and Hildreth was charged and convicted of eavesdropping and official misconduct. As a result of the convictions, Hildreth was fired from his employment as a Sheriff's deputy.

Plaintiff's current Complaint contains three causes of action. Plaintiff's first cause of action alleges that the County defendants deprived him of his First Amendment rights pursuant to 42 U.S.C. § 1983. The Second and Third causes of action allege intentional and negligent infliction of emotional distress respectively, against defendant Hildreth. Hildreth has not answered or otherwise moved against the Complaint.

The County defendants now move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Plaintiff cross moves for a default judgment against defendant Hildreth. For the reasons set forth below, I

grant defendant's motion to dismiss, and grant in-part and deny in-part plaintiff's motion for a default judgment.

## BACKGROUND

This action follows an extensive history of acrimony between Plaintiff and defendant Michael Hildreth, a neighbor of the plaintiff, and a former Monroe County Sheriff's Deputy. According to the allegations set forth in Plaintiff's complaint, a dispute arose in 2005 between Hildreth and Plaintiff. Plaintiff, who worked with children, and who was employed by several agencies that provided services to children, claims that Hildreth stalked him, and wrongfully informed his employers that he was a pedophile. As a result of these false accusations, Plaintiff was asked to not return to any of the organizations that employed him

Plaintiff further alleges that in 2005, Hildreth initiated a Sheriff's Department investigation into his alleged pedophilia which produced no leads. Following that, Hildreth created a plan to install a spyware program named "eBlaster" on Plaintiff's computer so that Hildreth would be able to monitor all of the actions taken on Plaintiff's computer. Pursuant to this plan, Hildreth adopted the alias of "Robin Mattox" and posed as woman involved with children's causes. Under the alias, Hildreth sent an email to Missel which contained an attachment. Once plaintiff opened the attachment, the spyware was installed on his computer, and Hildreth was able to monitor all of the plaintiff's computer activity.

Missel then received another email from "Robin Mattox" informing him that he was not to contact her or any of her students since she discovered that Plaintiff was on the "County Educational No Contact List." Plaintiff is not and was not on any such list.

On June 16, 2005, Plaintiff met with investigators from the Internal Affairs department of the Monroe County Sheriff's Department to complain about Hildreth's harassment. Following an investigation into Hildreth's activity, On June 21, 2006, Hildreth was charged with computer tampering, eavesdropping, and official misconduct by a Grand Jury.  Hildreth was convicted of eavesdropping and official misconduct in April 2007. After his conviction, the Monroe County Sheriff's Department terminated Hildreth's employment.

Thereafter, in 2007, Plaintiff filed suit in this court against the County of Monroe, the Monroe County Sheriff's Department, Monroe County Sheriff Patrick O'Flynn, and Hildreth claiming that the defendants violated his civil rights pursuant to 42 U.S.C. § 1983. On June 4, 2008, this Court dismissed Plaintiff's complaint against the County of Monroe. In so doing, this Court found that there was a lack of any "widespread practice" or "governmental custom" resulting in the deprivation of Plaintiff's constitutional rights. Missel v. County of Monroe, 2008 WL 2357637 (Jun. 4, 2008). Further, this Court determined that Plaintiff's allegations did not demonstrate that the County "tacitly approved

and/or ignored Hildreth's misconduct, or displayed indifference to his actions . . . ." Id. On November 4, 2009, the dismissal of Plaintiff's suit was affirmed on appeal. Missel v. County of Monroe, 351 F.App'x. 543 (2d Cir. 2009).

Approximately eight months after the dismissal of Plaintiff's suit was affirmed, Plaintiff filed the instant action, in which he alleges that Hildreth continues to harass him with the assistance of the Monroe County Sheriff's Department. Specifically, Plaintiff alleges that the County of Monroe dispatched Deputy Andy Suveges to Plaintiff's home with a letter from the Penfield Building Code Enforcement Authority stating that Hildreth filed a complaint regarding a smell emanating from Plaintiff's garden. Plaintiff further alleges that on June 15, 2008, Monroe County Sheriff's officers refused to arrest Hildreth despite Missel's complaint that Hildreth was illegally videotaping him in violation of a court order. Finally, plaintiff alleges that on December 21, 2009, a Monroe County Deputy Sheriff's officer came to Plaintiff's house, and suggested that a Christmas card sent by Plaintiff to another neighbor constituted harassment.

## **DISCUSSION**

I.  Defendants' Motion to Dismiss

A.  Legal Standards for Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept...all

factual allegations in the complaint and draw...all reasonable inferences in the plaintiff's favor." See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (internal quotation marks omitted). In order to withstand dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007) (disavowing the oft-quoted statement from Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. at 1965 (internal quotation marks omitted).  Moreover, conclusory allegations are not entitled to any assumption of truth, and therefore, will not support a finding that the plaintiff has stated a valid claim. Hayden v. Patterson, 594 F.3d 150, 161 (2nd Circ., 2010). Thus, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" See Goldstein v. Pataki,

6

516 F.3d 50, 56-57 (2d Cir.2008) (quoting Twombly, 127 S.Ct. at 1974).

    B.    Plaintiff has failed to State a Claim of Retaliation for Exercise of his First Amendment Rights.

    1.    Individual Defendants

Plaintiff brings a claim of retaliation for exercise of free speech under the First Amendment pursuant to 42 U.S.C. § 1983 against the County and John Doe Deputies 1-5. According to the plaintiff, he was retaliated against by the County and individual officers for filing the 2007 lawsuit, and the retaliation took the form of: (1) an officer delivering a notice that a complaint had been filed; (2) two officers refusing to arrest Hildreth when informed by plaintiff that Hildreth was engaged in illegal videotaping; and (3) an officer suggesting that plaintiff's sending of a Christmas card may be considered harassment.

To state a claim under § 1983 for retaliation for exercise of First Amendment rights, a plaintiff must allege that (1) he has a protected First Amendment right; (2) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's actions effectively chilled the plaintiff's exercise of his rights. See Butler v. City of Batavia, 323 Fed.Appx. 21, (2nd Cir., 2009); Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998).

In the instant case, plaintiff has alleged that he filed a civil lawsuit against defendant County of Monroe, an action that

constitutes the exercise of his First Amendment rights. <u>Zorzi v. County of Putnam</u>, 30 F.3d 885, 896 (7th Cir., 1994)("Retaliation for filing a lawsuit is prohibited by the First Amendment's protection of free speech . . . .")

Plaintiff has failed, however to allege facts which raise a plausible inference that he was retaliated against because he filed a lawsuit against Monroe County, or that his free speech rights were chilled.

Initially, there is no factual allegation that the officers who allegedly retaliated against Missel did so because he filed a federal lawsuit against the County of Monroe in 2007. Rather, the facts set forth in the Complaint allege that "[s]hortly after" he filed his lawsuit, a Monroe County Sheriff's Deputy personally delivered a letter from the Town of Penfield notifying Missel that a complaint for violations of the Town Code had been filed against him. Complaint at. ¶ 46. Such an allegation fails to allege retaliation for filing a Federal Complaint. There is no allegation that the County or any person acting on behalf of the County made the complaint of a town code violation. The Complaint merely alleges that a Sheriff's deputy delivered a letter. Just as the United States Postal Service would not be liable for retaliation if it delivered a letter, plaintiff's allegation that a Deputy Sheriff delivered a letter fails to allege retaliation.

Plaintiff further alleges that in June, 2008, he was retaliated against because two officers failed to arrest Hildreth upon Missel's Complaint that Hildreth had violated an Order of Protection.  Again, there is no factual allegation suggesting that Hildreth was not arrested out of retaliation for the Complaint that Missel had filed 8 months earlier.  Indeed, the facts alleged in the Complaint establish that Hildreth was arrested or subjected to court proceedings several times for violations of probation or criminal activity directed at Missel.  See Complaint at ¶¶ 56, 58 (noting Hildreth's September 10, 2008 arraignment on charges of criminal contempt); Complaint at ¶ 57 (noting prior charges that had been dismissed against Hildreth); Complaint at ¶ 62 (noting that Hildreth had been arrested three times); Complaint at ¶ 67 (noting Hildreth's arrest for having aimed a surveillance camera at Missel's house).  Accordingly, the alleged facts stated in the Complaint fail to plausibly suggest that the County allowed Hildreth to harass Missel in retaliation for Missel having filed a lawsuit against the County.

Plaintiff's final allegation of retaliation claims that on December 29, 2009, over two years after plaintiff filed his original lawsuit against the County, a Sheriff's Deputy went to Missel's home and suggested that Missel's sending a Christmas card to a neighbor could be construed as harassment, and threatened that "an investigation [presumably of plaintiff] would be commenced."

9

Complaint at ¶¶ 71, 72.  This claim fails to allege facts from which a plausible inference of retaliation could be made.

Even if plaintiff could allege that retaliatory acts were taken against him, he has failed to allege that the acts could objectively be considered to have a chilling effect on a person's exercise of free speech rights.  The acts complained of, delivering a notice of a complaint of a code violation, failing to immediately arrest Hildreth upon Missel's claim that Hildreth had violated an Order of Protection, and a Sherrif Deputy's claim that sending a Christmas card could be harassment, fail to allege facts that support a finding that the defendant's engaged in behavior intended to chill exercise of free speech rights.

To successfully allege that conduct had a chilling effect on the exercise of First Amendment rights, a plaintiff must establish that the retaliatory "official conduct actually deprived [him] of th[ose] right[s]" by either (1) silencing [him] or (2) having some 'actual, non-speculative chilling effect on [his] speech.'" <u>Williams v. Town of Greenburgh</u>, 535 F.3d 71, 78 (2d Cir.2008)(quoting <u>Colombo v. O'Connell</u>, 310 F.3d 115, 117 (2d Cir.2002)); <u>Avgerinos v. Palmyra-Macedon Central School Dist.</u>, 690 F.Supp.2d 115, 133-34 (W.D.N.Y., 2010)(Telesca, J.).  In this case, the plaintiff has failed to allege that his behavior has been modified as a result of the defendant's actions, and has failed to allege, in other than conclusory terms, that his First Amendment

rights have been chilled.  See  Curley v. Village of Suffern, 268 F.3d 65, 73 (2nd Cir., 2001)(private citizen asserting First Amendment retaliation claim required to show actual chilling effect as a result of defendant's conduct, as opposed to conduct that could objectively be seen as chilling First Amendment rights).  See also, Laird v. Tatum, 408 U.S. 1, 13-14 (1972)(plaintiff claiming retaliation must allege a specific present objective harm or a threat of specific future harm--subjective or vague claims of a chilling effect will not establish retaliation claim).  Because plaintiff has failed to allege the required elements of a claim for First Amendment retaliation, I grant the individual defendants' motion to dismiss plaintiff's § 1983 claims.

2. County Defendant

Plaintiff alleges that the County of Monroe violated his Constitutional rights by allowing members of the Monroe County Sheriff's Department to harass him, and by failing to protect him from harassment by Hildreth.  To state a cause of action against a municipality under § 1983, a plaintiff must "plead and prove three elements: (1) [that the municipality adopted] an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); see also, Monell v. Department of Social Services, 436 U.S. 658, 691 (1978).  A plaintiff may establish the existence of a policy or custom by submitting

11

evidence of the policy itself, or by "establishing that responsible supervisory officials acquiesced in a pattern of unconstitutional conduct by subordinates." Dove v. Fordham University, 56 F.Supp.2d 330, 336 (S.D.N.Y. 1999). A municipality may not be held liable under 42 U.S.C. § 1983 exclusively under a theory of respondeat superior. See Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). Accordingly, plaintiffs suing under § 1983 must prove that "policies or customs . . . sanctioned" by the municipality led to the alleged constitutional violation. Segal v. City of New York, 459 F.3d 207, 219 (2d. Cir 2006) (citing Monell, 436 U.S. at 694). To argue that an affirmative municipal policy was the cause of a constitutional violation, a plaintiff must put forth factual allegations in his complaint that support a plausible inference that the violation was due to a formal course of action officially sanctioned by the municipality's governing authority, or was the act of an individual with policymaking authority for the municipality. Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008) (citing Pembaut v. City of Cincinnati, 475 U.S. 469, 481 (1986)). A complaint states a § 1983 claim against a municipality if it plausibly alleges that a municipal policymaker was "knowingly and deliberately indifferent to the possibility that its officers" were likely to violate constitutional rights. Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir. 1986).

In the instant case, plaintiff has failed to identify any policy or custom adopted or sanctioned by the County of Monroe which led to the deprivation of his rights. The acts complained of in the Complaint: dispatching a Monroe County Deputy Sheriff to Plaintiff's home with a letter informing Plaintiff of a an alleged violation of a Town Code provision; refusing to arrest Hildreth upon Plaintiff's complaint that Hildreth was illegally videotaping him (Complaint at 12), and a Deputy Sheriff suggesting that a Christmas card sent by Plaintiff to another neighbor might constitute harassment (Complaint at 14), do not allege a policy or custom that led to the violation of Plaintiff's constitutional rights. Nor do these claims allege that the County knew of, or was deliberately indifferent to, Missel's constitutional rights. Accordingly, I find that plaintiff has failed to adequately allege municipal liability on the part of Monroe County, and I grant Monroe County's motion to dismiss plaintiff's Complaint.

II.  <u>Plaintiff's Motion for Default Judgment</u>.

Plaintiff alleges that Hildreth engaged in intentional infliction of emotional distress, and negligent infliction of emotional distress.  Hildreth has failed to Answer the Complaint, or appear in this action, and the Clerk of the Court has made an

entry of default against Hildreth. Plaintiff now moves for a default Judgment against Hildreth.[1]

Although Hildreth has not appeared in this action, the Court may not grant a default judgment without first examining the merits of the plaintiff's claims. As stated by this Court in Ortiz v. Lasker, 590 F.Supp.2d 423, 425 (W.D.N.Y. 2008)(Larimer, J.) "judgment against a defaulting party should be granted only after careful examination of the moving party's claim by the district court.... Indeed, a defendant's default does not in itself warrant a court in entering a default judgment because there must be a sufficient basis in the pleadings for the judgment entered."

In the instant case, I find that plaintiff has failed to state a claim for negligent infliction of emotional distress. "Under New York law, a plaintiff may recover for negligent infliction of emotional distress under one of two theories: (1) the 'bystander theory' or (2) the 'direct duty theory.'" Higgins v. Metro-north Railroad Company 2001 WL 503003 (S.D.N.Y., May 11, 2001)(citing United States ex rel. Ben-Shlush v. St. Luke's-Roosevelt Hosp.,, 200 WL 269895 at *4 (S.D.N.Y. Mar. 10, 2000) (additional citations

---

[1] I note that Hildreth failed to appear in plaintiff's previous action against him, (civil action 07-CV-6593T) and that this Court granted plaintiff's motion for a default judgment on his § 1983 claims against Hildreth.  In that case, I referred the matter to Magistrate Judge Jonathan Feldman for a hearing on damages.  Thereafter, however, prior to any hearing, the parties agreed to dismissal of the action with prejudice.  Plaintiff did not raise any claim of intentional infliction of emotional distress in the previous proceeding, and therefore he is not precluded from raising such a claim in this action.

omitted). Under the "bystander" theory, a plaintiff must allege that he witnessed the death or serious bodily injury of a member of her immediate family. Mortise v. United States, 102 F.3d 693 (2d Cir.1996). There are no allegations in the complaint that plaintiff witnessed anyone's death or serious bodily injury.  Nor can the plaintiff make out a claim under the "direct duty" theory, as such a claim requires evidence that a plaintiff suffered an emotional injury as a result of defendant's breach of a duty "which unreasonably endangered her own physical safety, . . . or caused her to fear for her physical safety." Wahlstrom v. Metro-north Commuter Railroad Company, 89 F.Supp.2d. 506, 530 (S.D.N.Y., 2000)(citations omitted). In this case, plaintiff has not identified the breach of a specific duty owed by the defendants to him that could have resulted in the negligent infliction of emotional distress. See Mortise, 102 F.3d at 693 (duty alleged "must be specific to the plaintiff, and not some amorphous, free-floating duty to society"). Finally, the complaint is devoid of any allegation that plaintiff suffered a physical manifestation of the emotional injury, a required element of a claim for negligent infliction of emotional distress. Bertuzzi v. Chase Manhattan Bank, N.A., 1999 WL 759997, at *7 n. 3 (S.D.N.Y. Sept. 24, 1999); Iannotti v. City of Amsterdam, 225 A.D.2d 990, 639 N.Y.S.2d 537, 538 (3d Dep't 1996). Because plaintiff has failed to

establish a claim for negligent infliction of emotional distress, I grant defendant's motion to dismiss this claim.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant engaged in "(1) extreme and outrageous conduct; (2) [with] intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir.1999). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Fischer v. Maloney, 43 N.Y.2d 553, 558 (1978). Ordinarily, whether the challenged conduct is sufficiently outrageous will be determined as a matter of law. Nevin v. Citibank, 107 F.Supp.2d 333, 345-46 (S.D.N.Y. 2000)(citing Howell v. New York Post Company, Inc., 81 N.Y.2d 115, 121 (1993)).

In the instant case, assuming the factual allegations set forth in the Complaint to be true, I find that plaintiff has stated a claim for intentional infliction of emotional distress. The plaintiff has alleged that Hildreth: (1) publicly accused Missel of being a pedophile; (2) visited plaintiff's employers and advised them that Missel was a pedophile; (3) wrongfully used his position as a Sheriff's Deputy to launch an investigation of the plaintiff

16

by the Sheriff's Department; (4) assumed an alias for the purpose of tricking plaintiff into installing spyware on plaintiff's computer; (5) illegally tracked all of Missel's activities on his computer; (6) stalked the plaintiff; (7) threatened to arrest and imprison the plaintiff; (8) taped a rotting fish head to Missel's car; (9) issued an ultimatum to plaintiff that he move from the neighborhood; (10) installed a spy camera to video the plaintiff at his home; (11) videotaped the plaintiff with a handheld camera; and (12) enlisted neighbors to stalk the plaintiff.  Plaintiff further alleges that Hildreth's conduct caused severe emotional distress.

Missel's allegations, taken as a whole, allege outrageous, atrocious conduct that is utterly intolerable in a civilized society.  Because the defendant has chosen not to answer the Complaint or controvert the alleged facts, the Court must accept them as true, and doing so, I find that plaintiff has stated a claim for intentional infliction of emotional distress, and is thus entitled to a default judgment.

Although plaintiff is entitled to a default judgment as a result of defendant Hildreth's failure to appear, the Court is not able, on this record, to determine the amount of damages to which plaintiff may be entitled. Accordingly, I refer this matter to the Honorable Jonathan W. Feldman for a hearing to determine plaintiff's damages.  Defendant Hildreth shall be put on notice of the date and time of the hearing, and shall be given an opportunity

to contest the amount of damages sought by plaintiff. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2nd Cir., 1992)("Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount.")

**CONCLUSION**

For the reasons set herein, I grant the County defendants' motion to dismiss Count I of the Complaint against all County Defendants. With respect to Count II of the Complaint, I grant plaintiff's motion for a default judgment against defendant Hildreth. I deny plaintiff's motion for a default judgment with respect to Count III of the Complaint. Accordingly, the only remaining defendant in this action is defendant Hildreth, and the only remaining Count of the Complaint is Count II, alleging intentional infliction of emotional distress. This matter is referred to Magistrate Judge Feldman to conduct a hearing, on notice to defendant Hildreth, for determination of plaintiff's damages, and to issue a Report and Recommendation on that issue to this Court.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         August 17, 2011